444 F.2d 1186
 Ann BARTMESS, Plaintiff-Appellant,
v.
DREWRYS U. S. A., INC., Local Union No. 275, International Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America, AFLCIO, Defendants-Appellees.
 No. 18724.
 United States Court of Appeals, Seventh Circuit.
 July 7, 1971.
 
 John W. Montgomery, Montgomery & Zimmerman, South Bend, Ind., for plaintiff-appellant.
 Philip B. Sklover, Atty., Stanley P. Hebert, Gen. Counsel, Julia Cooper, Atty., Washington, D. C., Equal Employment Opportunity Comm., amicus curiae.
 Frederick F. Thornburg, James W. Oberfell, Warren A. Deahl, South Bend, Ind., for defendants-appellees.
 Before DUFFY, Senior Circuit Judge, and FAIRCHILD and CUMMINGS, Circuit Judges.
 DUFFY, Senior Circuit Judge.
 
 
 1
 The plaintiff-appellant, Ann Bartmess, was a former non-supervisory employee of Drewrys Limited, U.S.A., Inc. (hereinafter referred to as Drewrys or Company). She was a member of defendant-appellee Union, No. 275. The Union was the exclusive bargaining agent for Drewrys' employees such as plaintiff. A retirement plan was adopted pursuant to a collective bargaining agreement negotiated by the Union and Drewrys. The retirement plan became effective on May 1, 1955 wherein it was agreed that female employees of the Company were to retire at age 62 and male employees were to retire at age 65.
 
 
 2
 About four and a half months before plaintiff's retirement, she filed an administrative charge with the Equal Employment Opportunity Commission (EEOC). The charge alleged that the Company and the Union were committing an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964, by maintaining a retirement program which discriminated against her because of her sex.
 
 
 3
 On June 30, 1967, plaintiff passed her 62nd birthday and was retired pursuant to the terms and conditions of the retirement agreement.
 
 
 4
 On February 21, 1968, more than one year after plaintiff filed her charge with EEOC, and approximately five and a half months after her retirement, the EEOC issued guideline Section 1604.31(a) wherein it was declared that "(a) difference in optional or compulsory retirement ages based on sex violates Title VII [of the Civil Rights Act of 1964]."
 
 
 5
 Conciliatory efforts were undertaken by the parties and, being unable to reach an agreement that was satisfactory to plaintiff, the EEOC notified her on October 23, 1969 that she was entitled, on the basis of her administrative charges, to institute civil action in the District Court within a period of 30 days. Plaintiff filed this suit under Title VII of the Civil Rights Act of 1964 within that time.
 
 
 6
 Both defendants moved to dismiss the complaint on three grounds: that plaintiff's complaint was not timely filed; that the 1964 Civil Rights Act did not apply to retirement plans having different mandatory retirement ages for men and women, and that Section 1604.31 of the EEOC guidelines was arbitrary and capricious.
 
 
 7
 The District Court held the only unlawful practice charged here was the actual discharge upon retirement, and that as plaintiff had not waited until after her retirement to file her grievance, she was barred from relief. This appeal followed.
 
 JURISDICTION
 
 8
 The first issue before us is whether plaintiff invoked the administrative procedure of the 1964 Civil Rights Act in a timely manner or whether she is now barred from relief because she did not wait until the actual date of her retirement before filing a charge with the EEOC. The relevant statutory provision states:
 
 
 9
 "A charge under subsection (a) of this section shall be filed within ninety days after the alleged unlawful employment practice occurred." 42 U.S. C. 2000e-5(d) (Title VII, Section 706(d)).
 
 
 10
 It is settled law that the ninety day limitation is no bar when a continuing practice of discrimination is being challenged rather than a single, isolated discriminatory act. Cox v. United States Gypsum, 409 F.2d 289 (7 Cir., 1969). Appellees concede that this is the law, but argue that the only potentially unlawful practice under a retirement plan is the actual discharge and not the overall maintenance of the plan. We disagree. We have no difficulty in concluding that the actual maintenance of a discriminatory retirement plan can be one of the acts which "adversely affect [an individual's] status as an employee, because of such individual's * * * sex." and that retirement plans should be viewed as "conditions of employment" within the meaning of Section 703 of Title VII (42 U.S.C. 2000e-2 (a)).
 
 
 11
 The collective bargaining agreement in force at the time plaintiff filed her charge provided that female employees must retire three years prior to their male counterparts. If such a contract is found to be discriminatory, its mere presence in a collective bargaining agreement would render female workers "aggrieved persons" within the meaning of Title VII and would continue to do so for the entire time the individual was employed.
 
 
 12
 This Court has considered the impact of a retirement plan's terms on the employee's employment status in Inland Steel Co. v. N.L.R.B., 170 F.2d 247 (7 Cir., 1948), cert. den. 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112. We there concluded that an employee's present interest in a plan for his retirement was sufficient to make such a plan an "other condition of employment" within the meaning of the National Labor Relations Act, even though retirement might not take place for many years. Likewise, we feel that an employee's interest in such a plan is sufficiently important to allow him or her to challenge an aspect of that plan in advance of retirement when it is believed to violate Title VII. We thus construe Title VII in harmony with the N.L.R.A. on this point.
 
 
 13
 Appellees advanced a second reason why the jurisdictional provisions of Section 706 should be held to bar plaintiff's suit. Appellees argue that the only unlawful employment practice challenged in the complaint was the termination of employment, and that thus there is a fatal variance with the administrative charge, which challenged the maintenance of the discriminatory plan as well. We find no such variance to be present.
 
 
 14
 Paragraph 8 of the complaint reads in full:
 
 
 15
 "Drewrys terminated plaintiff's employment pursuant to the terms of a retirement program agreement between Drewrys and the Union, the retirement provisions of which required compulsory retirement of male employees at age 65 and compulsory retirement of female employees at age 62, by reason of which and thereby Drewrys discriminated against the plaintiff, a female person, because of her sex by maintaining a compulsory policy of forcing men to retire at age 65 and women to retire at age 62, and by terminating her employment by forcing her to retire after she passed her sixty-second birthday which is an unlawful employment practice in violation of Title VII, Section 703(a) of the Act (Title 42, Section 2000e-2(a)), which said unlawful practice was committed at South Bend, Indiana, within the jurisdiction of this court."
 
 
 16
 It is clear that both the "maintenance of a compulsory policy" as well as the most immediate consequence of that policy, e. g., the termination, were challenged in the complaint.
 
 
 17
 Since all of the other jurisdictional prerequisites of Section 706 are present here, we find that jurisdiction under Title VII is present.
 
 WHETHER A CLAIM IS STATED
 
 18
 We are next called upon to decide whether retirement plans containing differing treatment of men and women with respect to retirement ages violate Title VII of the 1964 Civil Rights Act. The only decision directly on point has answered this question affirmatively. Rosen et al v. Public Service Electric and Gas Company, 328 F.Supp. 454 (D. C.N.J., 1970) (3 Employment Practices Divisions 6208) (affirmed on rehearing 3 E.P.D. 6216). We agree with the holding of the Rosen Court.
 
 
 19
 As mentioned heretofore, we read Title VII to include retirement plans as "conditions of employment" just as they are similarly viewed under the National Labor Relations Act. Inland Steel Co. v. N.L.R.B., supra. Title VII forbids any discrimination with respect to such conditions of employment. Furthermore, the Act proscribes classifications by employers "* * * which would tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's * * * sex * * *." Section 703(a) (2) [42 U.S. C. § 2000e-2(a) (2)]. Similar prohibitions against such classifications by labor organizations are contained in Section 703(c) (2) [42 U.S.C. § 2000e-2(c) (2)].
 
 
 20
 A plain reading of the statute indicates that retirement plans which treat men and women differently with respect to their ages of retirement are prohibited. The plaintiff here, by virtue of the plan, is forced to give up three years of work together with the money she would have earned during that period. Such a forced retirement is tantamount to a discharge. Moreover, the classification of employees on the basis of sex is, of itself, contrary to the intent of Title VII. Rosen, supra; Sprogis v. United Air Lines, 444 F.2d 1194 (7 Cir., 1971).
 
 
 21
 In Sprogis, we recently noted that: "[i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." Defendants have come forward with no reasons why we should conclude that the language of Title VII does not mean what it says.
 
 
 22
 Instead, defendants urge that the legislative history of Title VII indicates that retirement plans were not intended to be covered when the Act was passed. We cannot agree that such an intent has been demonstrated. Defendants rely heavily on a letter written by Senator Humphrey stating his belief that retirement plans were not within the scope of the Act. But this letter was written several years after the passage of Title VII and has no bearing on the question of Congress' intent.
 
 
 23
 Congress did grant certain express exceptions to Title VII's sex discrimination provisions, but exemption of retirement plans was not one of them. The Rosen Court faced the same question and, after a thorough study of the legislative history, concluded that: "[t]he debates in Congress neither support nor refute Senator Humphrey's letter." We conclude that absent some strong indication of legislative intent to the contrary, we must read the words of the statute with their commonly accepted meanings. Rosen, supra, 325 F.Supp. at 463. We therefore hold that discrimination in retirement plans in this case violates Title VII.
 
 
 24
 We note further that the EEOC guideline on retirement plans (29 C.F.R. Section 1604.31(a) states that "[a] difference in optional or compulsory retirement ages based on sex violates Title VII" and that such an "* * * administrative interpretation of the Act by the enforcing agency is entitled to great deference." Griggs v. Duke Power Co., 401 U.S. 424, 434-435, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). This guideline is consistent with the language of the Act and we concur in it.
 
 
 25
 It does not matter for our purposes that the guideline was not drafted until after this present charge was filed. EEOC guidelines, while "entitled to great deference," do not have the force of law and cannot abrogate rights enforceable under the 1964 Civil Rights Act. American Newspaper Publishers Association v. Alexander, 294 F.Supp. 1100 (D.C.D.C.1969).
 
 
 26
 The relevant date when those rights became enforceable was the effective date of the Civil Rights Act, not the date of the guideline. The defense of good faith reliance on a written opinion of the Commission available under Section 713 of the Act is not applicable here. See Sprogis, supra, (444 F.2d p. 1200).
 
 
 27
 We have reviewed appellees' contentions that this EEOC guideline is arbitrary and capricious in operation and find them to be without merit. The fact that a minimal grace period is adopted in the guideline does not mean that it works capriciously with respect to charges filed prior to that time. The guideline could not, under the law, have served to cut off claims already before the Commission.
 
 
 28
 The order appealed from is reversed, and this cause is remanded to the District Court for a trial on the merits.
 
 
 29
 Reversed and remanded.