**Brenda Gail WILLETT, Plaintiff,**

v.

**EMORY AND HENRY COLLEGE, Defendant.**

**Civ. A. No. 75–0569.**

United States District Court, W. D. Virginia, Abingdon Division.

Jan. 27, 1977.

Emmitt F. Yeary, Yeary & Lohman, P.C., Abingdon, Va., for plaintiff.

Diana P. Guza, Penn, Stuart, Eskridge & Jones, Abingdon, Va., for defendant.

## OPINION

WILLIAMS, District Judge.

Brenda Gail Willett instituted this action against Emory and Henry College, alleging that the defendant committed unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The plaintiff has also included a claim for relief under the Equal Pay Act of 1963, 29 U.S.C. § 206(d), and the defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The case is presently before this court for a ruling on that motion.

## STATEMENT OF FACTS

The plaintiff was employed as an instructor of Sociology by Emory and Henry College from September 1972 through August 1973. Under the terms of her employment contract with the college, plaintiff was eligible to participate in a group health and hospitalization insurance plan, which provided dependent benefits to the spouses and children of employees if the employee chose to enroll them in the plan and if the dependents met certain eligibility requirements. The policy also included benefit payments for expenses incurred in connection with hospital confinement and surgical treatment for pregnancy and related disabilities. The applicable provision is set forth below:

> Pregnancy Expense Benefits . . . are available to you if you are a female Employee, or to your wife if you are a male Employee, *and if you are insured with respect to your Dependents.* (Emphasis supplied).

Ms. Willett, a single female, enrolled in the group insurance plan for herself and, in May of 1973, submitted a claim to the Travelers Insurance Company, the insurer of the college's group health insurance plan, for surgical and medical services rendered in April of that year for the treatment of a miscarriage. Travelers routinely denied the claim on the grounds that plaintiff did not have dependent coverage and was thereby ineligible for maternity benefits.

On May 14, 1973, plaintiff wrote a letter to the President of the college, Dr. Thomas Chilcote, requesting that Emory and Henry College "reimburse her for $1000 in medical bills" in the event that Travelers Insurance Company refused to pay her pregnancy benefits. In response to this request, President Chilcote sent a letter to plaintiff, dated May 16, 1973, advising her that the issue she raised in connection with her hospitalization claim was between herself and the insurance company and that the college would not assume any liability for pregnancy expenses not reimbursed by the insurer. "The responsibility of Emory and Henry College", Dr. Chilcote stated, "is solely to be assured that the insuring company fulfills its contractual obligations."

On November 14, 1973, plaintiff sent a letter to the Equal Employment Opportunity Commission (EEOC), which was filed as a sex discrimination charge against the college on November 20, 1973, one hundred eighty-seven (187) days after the date of the May 16, 1973 letter from President Chilcote. Subsequently, plaintiff commenced the action presently before this court. In her complaint, the plaintiff alleges that the pregnancy benefits provision of the insurance plan discriminates against her on account of sex because it denies equal coverage to male and female employees. Ms. Willett seeks injunctive relief, reimbursement of the medical expenses she incurred as a result of her pregnancy plus interest from May 16, 1973, as well as attorney's fees and costs expended in bringing this action.

In support of its motion for summary judgment, the defendant makes the following arguments: (1) that the court lacks jurisdiction over the plaintiff's Title VII claim because she failed to timely file her sex-discrimination charge with the EEOC within 180 days from the date that the unlawful employment practice allegedly took place; (2) that the plaintiff has failed to state a Title VII claim upon which relief can be granted because she is requesting compensatory damages, a remedy that is not provided under 42 U.S.C. § 2000e–5(g);

(3) that plaintiff has failed to state a claim upon which relief can be granted under the Equal Pay Act, because maternity benefits are not "wages" within the meaning of the Act; and (4) that plaintiff is barred from recovery under the Equal Pay Act because she failed to bring this action within the two-year limitations period set forth therein.

When considering a motion for summary judgment, the court may enter judgment only when the pleadings, affidavits and admissions show that there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law. With this consideration in mind, the court will proceed to rule upon the issues presented in defendant's motion.

## JURISDICTION

The first issue before this court is whether plaintiff invoked the administrative procedure of the 1964 Civil Rights Act in a timely manner or whether she is barred from relief because she did not file a charge with EEOC within 180 days after the defendant refused to reimburse her for medical expenses incurred in connection with her miscarriage in April 1973. The relevant statutory provision states that:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000–5(e).

It is settled law that the filing of a charge within the statutory limitations period set forth above is a jurisdictional prerequisite to the commencement of a civil action under Title VII in federal court. *Williams v. Norfolk and Western Ry. Co.*, 530 F.2d 539 (4th Cir. 1975); *East v. Romine, Inc.*, 518 F.2d 332 (5th Cir. 1975); *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228 (8th Cir. 1975). But even if the 180-day filing requirement is a prerequisite to court action, it is no bar where a continuing practice of discrimination is being challenged rather than a single isolated, discriminatory act. *Williams v. Norfolk and Western Ry. Co.*, *supra*; *Cox v. U. S. Gypsum*, 409 F.2d 289 (7th Cir. 1969); *Mixson v. Southern Bell*

*Telephone Co.,* 334 F.Supp. 525 (N.D.Ga. 1971).

█ The defendant contends that the only potentially unlawful employment practice being challenged is the refusal of the college on May 16, 1973 to reimburse plaintiff for her medical bills. Because the plaintiff did not file an EEOC charge within 180 days thereafter, defendant argues, she is thereby precluded from bringing an action in this court. This line of reasoning, however, misconstrues the nature of plaintiff's argument. The plaintiff does not simply challenge the propriety of the college's actions in denying her benefits, but questions the overall maintenance of an insurance plan by the college which purportedly discriminates against women. She alleges that the objectionable terms and provisions of the insurance plan were in effect at the time she commenced her employment with the defendant and continued to affect her adversely for the duration of plaintiff's employment.

In view thereof, the court has no difficulty in concluding that the actual maintenance of a group health and hospitalization plan, if found to be discriminatory, constitutes an unlawful employment practice within the meaning of Section 703(a) of the Civil Rights Act, and would continue to violate the plaintiff's civil rights during the entire period of time that she was employed at the college.

A closely analogous situation has arisen in cases involving discriminatory pension and retirement plans, where such plans were found to be violations of the Civil Rights Act. *Bartmess v. Drewrys U. S. A., Inc.,* 444 F.2d 1186 (7th Cir. 1971); *Mixson v. Bell Telephone Co., supra.* In *Bartmess, supra,* a female plaintiff challenged a retirement plan adopted by her union pursuant to a collective bargaining agreement which provided that female employees of the company were to retire at age 62 and male employees at age 65. Although she did not file a complaint with EEOC within

the prescribed limitations period, the court held that the filing requirement was no bar to her action in federal court. Therein, the court ruled as follows:

> It is settled law that the ninety day limitation is no bar when a continuing practice of discrimination is being challenged rather than a single, isolated discriminatory act.[1] (citations omitted). Appellees concede that this is the law, but argue that the only potentially unlawful practice under a retirement plan is the actual discharge and not the overall maintenance of the plan. We disagree. We have no difficulty in concluding that the actual maintenance of a discriminatory retirement plan can be one of the acts which "adversely affect [an individual's] status as an employee, because of such individual's . . . sex" and that retirement plans should be viewed as "conditions of employment" within the meaning of Section 703 of Title VII (42 U.S.C. § 2000e–2(a)). *supra,* at 1188.

Just as the maintenance of a discriminatory retirement plan constitutes a continuing practice of discrimination under Title VII, so must the institution and maintenance of a discriminatory health and hospitalization insurance policy. The court therefore concludes that the statutory filing requirements do not apply to this action because the alleged unlawful employment practices, if found to be discriminatory, would constitute continuing violations of the Civil Rights Act.

## RESOLUTION OF THE ISSUES

I. Plaintiff's Title VII Damage Claim

█ Defendant next challenges the plaintiff's claim for monetary relief as inappropriate under Title VII. Plaintiff seeks to recover the sum of $3,000 for medical expenses and other financial hardship, plus interest, costs and attorney's fees. Defendant argues that plaintiff seeks an award of compensatory damages, a legal remedy not

---

1. Congress amended 42 U.S.C. § 2000e–5(e) in 1972 and extended the limitations period for

filing a complaint with EEOC from 90 days to 180 days.

provided under Title VII because the remedial provisions of the Act clearly limit monetary recoveries to back pay and other equitable relief. *Van Hoomissen v. Xerox Corp.*, 368 F.Supp. 829 (N.D.Cal.1973).

The relevant section of Title VII, 42 U.S.C. § 2000e–5(g), provides as follows:

If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency,or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.

The courts, in fashioning relief under this section, are mindful of the basic purposes and objectives underlying the Civil Rights Act of 1964. In *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), the Supreme Court, quoting from a Senate Conference Committee Report on the 1972 revisions to the Civil Rights Act, 118 Cong.Rec. 7168 (1972), summarized these objectives as follows:

The provisions of this subsection are intended to give the courts wide discretion exercising their equitable powers to fashion the most complete relief possible. In dealing with the present section 706(g) the courts have stressed that the scope of relief under that section of the Act is intended to make the victims of unlawful discrimination whole, and that the attainment of this objective rests not only upon the elimination of the particular unlawful employment practice complained of, but also requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination. 422 U.S. at 421, 95 S.Ct. at 2373.

Because of the strong "make whole" purpose embodied in the remedial provisions of the Act, it is clear that the ingredients of a back pay award should include more than straight salary. Rather, interest, overtime, shift differentials, and fringe benefits are among the items which should be included in back pay. *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 263 (5th Cir. 1974). In at least one case, the court has ruled that an employee who was discharged in violation of Title VII of the Civil Rights Act was entitled to recover, in addition to lost wages, medical expenses attributable to his release from employment and termination of hospital and medical benefits. *Culp v. General American Transport Corp.*, 8 FEP Cases 460 (N.D.Ohio 1974). It is therefore evident that a back pay award can include benefit payments under an insurance plan.

The court recognizes further that Section 703(a)(1) of the Act, 42 U.S.C. § 2000e–(2)(a)(1) provides that it shall be an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of that individual's sex. Pursuant to this statutory edict, the EEOC has promulgated Guideline No. 1604.9(b), which states that it shall be unlawful for an employer to discriminate between men and women with regard to fringe benefits. Under Section (a) of this regulation, fringe benefits are defined in the following manner:

"Fringe benefits", as used herein, includes medical, hospital, accident, life insurance and retirement benefits; profit sharing and bonus plans; leave and other terms, conditions, or privileges of employment.

As demonstrated above, both the statutory language and the administrative construction of the Act clearly establish that health and hospitalization plans are "terms, conditions, or privileges" of employment and that employees have a right to

equality in treatment under such plans. It has long been the rule that where federally protected rights have been invaded, courts will be alert to adjust their remedies so as to grant the necessary relief. *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946). In the case presently before this court, the most logical type of relief the court could grant would be to order the defendant college to reimburse plaintiff for her medical expenses up to the limits of the policy, provided, of course, that she sufficiently demonstrated that the plan was discriminatory.

The court adds that the provision for back pay in Title VII was modeled on a similar provision in the National Labor Relations Act, 29 U.S.C. § 160(c), whose object is to vindicate the public policy of the statute by making employees whole for losses suffered on account of unfair labor practices. *Nathanson v. NLRB*, 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952). Under the NLRA, the courts and the National Labor Relations Board have given a broad construction to the categories of "rates of pay" and "wages" to cover every form of compensation for labor performed, whether direct or indirect. In this regard, the term wages used in the Act embraces within its meaning emoluments of value such as pension and insurance benefits which may accrue to employees out of their employment relationship. *Inland Steel Co.*, 21 LRRM 1310, enforced 170 F.2d 247, 22 LRRM 2505 (7th Cir. 1948), *W. W. Cross and Co. v. NLRB* 174 F.2d 875, 25 LRRM 2068 (1st Cir. 1949). By including insurance fringe benefits within the statutory definition of back pay under § 2000e–5(g), the court believes that the remedial provisions of Title VII will be harmonized with the NLRA.

On the plaintiff's claim for attorney's fees and costs, the court notes that it has discretion to award costs to the prevailing party and, by statute, may authorize a reasonable attorney's fee as part of the costs. 42 U.S.C. § 2000e–5(k). The court, however, will strike plaintiff's claim for damages for financial hardship.

## II. Plaintiff's Equal Pay Act Claims

The next ground which defendant raises in support of its motion is that plaintiff has failed to file her claim under the Equal Pay Act within the two-year limitations period prescribed by 29 U.S.C. § 255. Plaintiff alleges, however, that the defendant engaged in a wilful violation of the Equal Pay Act for which a three-year statute of limitations is applicable. Because the "wilfulness" question raises a genuine issue as to a material fact, the court must overrule the defendant's motion for summary judgment at this time.

Finally, the defendant alleges that the plaintiff has failed to state a claim under the Equal Pay Act because the Department of Labor, by administrative regulation, has excluded from the definition of wages for equal pay purposes "payments related to maternity." 29 C.F.R. 800.110. The court notes that there is some conflict in these regulations because the Department has stated in 29 C.F.R. 800.113 that it is still considering whether the Equal Pay Act should apply to health insurance benefits. However, for reasons to be stated hereinafter, the court's decision in this case renders a ruling on this particular issue unnecessary.

## III. Whether Plaintiff Has Stated a Cognizable Claim Under Title VII or the Equal Pay Act

The court is of the opinion that there is a substantial issue in this case over whether the plaintiff has set forth a cognizable claim of sex discrimination within the meaning of Title VII of the Civil Rights Act or Section 6(d) of the Equal Pay Act, 29 U.S.C. § 206(d). Although the parties have not mentioned the issue in the briefs filed in this action, the court feels that this question is of sufficient importance and merit to warrant raising it on the court's own motion.

As stated previously, the plaintiff alleges that the provision in the insurance policy relating to the payment of pregnancy benefits discriminates against her because the policy requires that the named insured also

enroll his or her dependents in the plan in order to establish entitlement to benefits. It must be emphasized, however, that the dependency requirements apply with equal force to male as well as female employees. Thus, it is apparent that a single male or unmarried female without children would not be eligible for such benefits under the insurance policy.

Under the Administrative Guidelines to the Civil Rights Act, an employer is guilty of an unlawful employment practice only if he makes "available benefits for the wives of male employees which are not made available to female employees." EEOC Guideline 1604.9(d). In that same section, the Commission cited the following example of sex discrimination:

> An example of such an unlawful employment practice is a situation in which wives of male employees receive maternity benefits while female employees receive no such benefits.

Clearly, the action presently before this court does not fall within the parameters listed above. Under the group health insurance policy at Emory and Henry College, both female employees and the wives of male employees are entitled to receive maternity benefits. The plan simply attaches a condition that both male and female employees purchase additional dependency coverage. The insurance package going to relevant identifiable groups that the court is presently concerned with—Emory and Henry College's male and female employees—covers exactly the same categories of risk and is facially non-discriminatory in the sense that there is no risk from which male employees or their wives are protected and female employees are not. *Gilbert v. General Electric Co.*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). As the court ruled in *Gilbert, supra,* gender-based discrimination does not result simply because an employer's disability package is less than all-inclusive. The mere fact that the pregnancy benefits listed in the policy are not available to single persons does not give rise to a cause of action for sex discrimination under Title VII or under the provisions of the Equal Pay Act.

The court recognizes, however, that a *prima facie* violation of Title VII can be established in some circumstances upon proof that the effect of an otherwise facially neutral plan or classification is to discriminate against members of one class or another. In this connection, the plaintiff draws the court's attention to a letter, dated July 16, 1973, written by A. Karl Ehlshlager, Assistant Supervisor of the Traveler's Insurance Company. In that letter, Mr. Ehlshlager stated that "the company's contract of insurance does not provide pregnancy benefits for female employees." The court is of the opinion, however, that this letter is totally irrelevant to the matter before it now. The statements rendered therein are completely erroneous because the policy clearly provides maternity benefits to female employees. Moreover, Mr. Ehlshlager's letter contradicts an earlier statement he made in a letter in May of 1973 to the effect that the company was denying liability because plaintiff lacked the requisite dependent coverage. The court therefore finds no worthwhile purpose in considering an erroneous statement made by an official who is neither a representative of nor affiliated with the defendant college.

A separate order will be entered by this court, overruling the plaintiff's motion for summary judgment, granting the defendant's motion for summary judgment, and dismissing the case from the docket of this court.