MICHIGAN STATE EMPLOYEES ASSOCIATION v CIVIL SERVICE
COMMISSION

Docket Nos. 98098, 99196. Submitted May 11, 1988, at Lansing.
Decided February 27, 1989.

In 1974 the Civil Service Commission made changes to the group
life insurance plan covering the state civil service. Prior to the
changes, benefits for a covered state employee, regardless of
age, equaled his annual salary rounded up to the next thousand
dollars. Retired state employees could participate in the plan
subject to a $2,500 maximum benefit. After the changes, bene-
fits for covered employees who were sixty-one years old were
reduced by fifteen percent each year until at age sixty-five such
employees would have twenty-five percent of the benefits they
had at age sixty. Retired employees were affected in the same
manner. As before the changes, the state paid seventy-five
percent of the premium and the employees paid twenty-five
percent. The changes were rescinded effective October 1, 1976,
so that each state employee, regardless of age, now has a
benefit equal to his annual salary rounded up to the next
thousand dollars. However, in 1975 the Michigan State Employ-
ees Association and Frank C. Morgan, individually and on
behalf of other state employees age sixty-one and older, brought
an action in Ingham Circuit Court against the Civil Service
Commission, alleging that the change to the life insurance plan
violated the Age Discrimination in Employment Act, 29 USC
621 et seq. The commission filed a counterclaim alleging that
the MSEA had participated in developing the challenged modifi-
cation to the plan. The circuit court confirmed a list of 146
affected state employees as members of plaintiffs' class. In 1985
the circuit court, Thomas L. Brown, J., ruled that it lacked
subject-matter jurisdiction to hear the case, but transferred the
case to the Court of Claims, where the same judge presided.
Following trial, the court found that the modification violated

REFERENCES

Am Jur 2d, Federal Practice and Procedure §§ 1670 et seq.; Job
Discrimination §§ 98-105, 2076 et seq.

"Bona fide employee benefit plan" exception to general prohibition
of age discrimination in employment (29 USCS § 623(f)(2)). 70
ALR Fed 110.

the ADEA and it dismissed the commission's counterclaim. The court entered an order providing that members of plaintiffs' class could collect both compensatory and liquidated damages upon proof thereof. Trial continued as to damages. The court held that the proper measure of damages for employees who had purchased replacement insurance would be the premiums paid for such insurance and that damages for the beneficiaries of employees who had died without purchasing replacement insurance would be the premiums not paid by the state as a result of the modification. The court subsequently awarded $2,227.66 in compensatory and liquidated damages to nineteen class members, but entered a judgment against the remaining 127 members. The court granted motions by the MSEA to amend the judgment and for attorney fees, but denied the MSEA's motions for costs and for partial relief from the judgment. The commission appealed from the judgment entered against it and from the orders transferring the case to the Court of Claims, confirming the class, and the grant of the motions for attorney fees and to amend the judgment. The MSEA, challenging the measure of damages, cross appealed from the judgment and the order denying its motion for partial relief from judgment.

The Court of Appeals consolidated the appeals and *held:*

1. The circuit court did not err in ruling that the Court of Claims had subject-matter jurisdiction over this action. The Court of Claims has power and jurisdiction to hear and determine all claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the state and any of its departments, commissions, boards, institutions, arms, or agencies. This jurisdiction, however, does not extend to claims for which an adequate remedy exists in federal court. In this case, a remedy did not exist in federal court. Although Congress may abrogate a state's Eleventh Amendment right to immunity from suit in federal court, it can do so only by making its intention unmistakably clear in the language of an applicable statute. The ADEA contains no such language. Hence, the circuit court correctly ruled that the Court of Claims had subject-matter jurisdiction.

2. The circuit court did not err in denying the commission's request for attorney fees it incurred while the action was pending in circuit court.

3. The Court of Claims did not clearly err in finding that the modification violated the ADEA, which makes it unlawful for an employer to discriminate against any individual with regard to the terms, conditions or privileges of employment on the basis of the individual's age.

4. The commission acted in reckless disregard as to whether

the modification violated the ADEA. The Court of Claims did not err in awarding liquidated damages pursuant to 29 USC 626(b) for the commission's wilful violation of the ADEA.

5. The Court of Claims erred in determining the proper measure of damages for the beneficiaries of employees between the ages of sixty-one and sixty-five who died while the modification was in effect. Instead of limiting their damages to amounts not paid by the state in premiums as a result of the reduced benefit levels, the court should have awarded damages in amounts equal to what their benefits under the plan would have been in the absence of the modification, i.e., equal to annual salaries rounded to the next thousand.

6. The Court of Claims erred in granting the MSEA's motion to amend the judgment. The motion was not timely made within twenty-one days of the entry of the judgment as required by MCR 2.611(B). Even if the motion were timely, the Court of Claims had lost jurisdiction since the commission had already filed an appeal with the Court of Appeals by the time the motion was made.

7. The Court of Claims did not abuse its discretion in awarding the MSEA its attorney fees. Although only 146 claims went to trial, and only nineteen members proved damages, the MSEA prevailed on the primary issue of liability.

Affirmed in part and reversed in part.

1. CONSTITUTIONAL LAW — STATE IMMUNITY FROM SUIT IN FEDERAL COURTS.

Although Congress can abrogate a state's Eleventh Amendment right to immunity from suit in federal court, it can do so only by making its intention unmistakably clear in the language of an applicable statute (US Const, Am XI).

2. CIVIL RIGHTS — AGE DISCRIMINATION IN EMPLOYMENT ACT — JURISDICTION — COURT OF CLAIMS.

The Court of Claims has jurisdiction to hear and determine a claim brought against the state and any of its departments, commissions, boards, institutions, arms, or agencies where it is alleged that the state, as an employer, has violated the Age Discrimination in Employment Act (29 USC 621 et seq.; MCL 600.6419; MSA 27A.6419).

3. CIVIL RIGHTS — AGE DISCRIMINATION IN EMPLOYMENT ACT.

The Age Discrimination in Employment Act makes it unlawful for an employer to discriminate against any individual with regard to the terms, conditions or privileges of employment on the basis of the individual's age; however, it is not unlawful for

an employer to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan which is not a subterfuge to evade the purposes of the act (29 USC 623[a][1] and [f][2]).

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Michael E. Cavanaugh, Gary C. Rogers* and *Mark A. Bush*), for plaintiffs.

*MacLean, Seaman, Laing & Guilford* (by *Kenneth Laing* and *Kathleen R. Opperwall*), for defendant.

Before: SULLIVAN, P.J., and WAHLS and T. E. JACKSON,* JJ.

PER CURIAM. Defendant Michigan Civil Service Commission appeals from various orders and judgments of the Court of Claims and the Ingham Circuit Court holding that the commission violated the Age Discrimination in Employment Act, 29 USC 621 *et seq.*, by implementing certain changes in a life insurance plan for state employees. Plaintiff, Michigan State Employees Association, cross appeals from a Court of Claims judgment on damages. In a consolidated companion case, defendant commission also appeals from a Court of Claims order granting the association's motion to amend the judgment and to grant attorney fees. We affirm in part and reverse in part.

This case arose out of changes made in 1973 in the life insurance coverage available to state employees over sixty years of age. Prior to the changes, retired state employees could purchase life insurance with a maximum benefit of $2,500. Active state employees could participate in a

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

group insurance plan that provided a life insurance benefit equal to an employee's salary, rounded up to the next thousand dollars, with a minimum benefit of $10,000. The premium rate was thirty-two cents biweekly for each $1,000 of coverage. The state paid seventy-five percent of the premium, i.e., twenty-four cents; the employee paid twenty-five percent of the premium, i.e., eight cents. All employees, regardless of age, paid the same amount.

In 1973, the Group Insurance Advisory Committee, made up of both management and employee representatives, recommended that at age sixty-one an employee's benefits be reduced fifteen percent each year until at age sixty-five an employee has twenty-five percent of the benefit he or she had at age sixty. Retirees would be affected in the same manner. Prefaced by other various committees' recommending this modification, defendant commission adopted this modification plan in December, 1973. After obtaining the necessary approvals, the modification became effective July 1, 1974.

On April 8, 1974, Congress amended the ADEA so as to make it applicable to the states as employers, effective May 1, 1974. 29 USC 630(b). The commission's modification, having already been approved, took effect as scheduled on July 1, 1974, two months after the effective date of the pertinent amendment to the ADEA. Soon after, in the fall of 1974, the modification in the group insurance plan drew complaints. It was suggested that Michigan was not in compliance with the ADEA. The State Compensation Advisory Board recommended that the plan be rescinded. However, the plan remained viable until December, 1975, when, incidentally, one month after this lawsuit was filed, defendant commission rescinded the modification. Defendant

commission ordered that, effective October 1, 1976, each active state employee, regardless of age, receive a life insurance benefit equal to his or her salary rounded up to the next thousand dollars.

In November, 1975, the employees association and one Russ Wright filed suit in Ingham Circuit Court on behalf of all other state employees age sixty-one or older who were similarly situated, alleging, among other things, that the modified insurance plan violated the ADEA. Defendant Civil Service Commission counterclaimed that, if it was liable to the employees association, the employees association, in turn, should be liable to it because members of the association participated in developing the modified plan. The circuit court thereafter confirmed the class. Approximately 1,100 potential class members responded to the notice. The following years saw the wheat separated from the chaff until the list of class members ultimately was winnowed down to a mere 146.

On April 2, 1985, the Ingham Circuit Court ruled that it did not have subject-matter jurisdiction to hear the case, but transferred the case to the Court of Claims under MCR 2.227 to be heard by the same judge who had been hearing it as a circuit judge.

On September 25, 1985, following a bench trial on the liability issue, the court found that the insurance modification plan violated the ADEA and dismissed the Civil Service Commission's counterclaim. In its order of October 23, 1985, the court provided that members of the class could collect both compensatory and liquidated damages if they could prove them.

Trial as to damages continued. By order dated October 22, 1986, the court held that the proper measure of damages for employees who had purchased replacement insurance would be the premi-

ums paid for such insurance. Damages for the beneficiaries of employees who had died without purchasing replacement insurance would be the premiums not paid by defendant commission as a result of the modification. On January 7, 1987, the court awarded $2,227.66 in compensatory and liquidated damages to nineteen class members, but entered a judgment against the remaining 127 members.

On January 27, 1987, the commission appealed the judgments entered January 7, 1987, and October 23, 1985, and orders confirming the class and transferring the case to the Court of Claims.

On January 29, 1987, the employees association moved to amend the judgment, for partial relief from the judgment, and for costs. On February 6, 1987, the association asked for attorney fees. By order dated March 6, 1987, the court granted the motions to amend judgment and for attorney fees, but denied the motions for costs and for partial relief from the judgment. The commission also appeals from this order. The association cross-appeals from the order of January 7, 1987, and the order of March 6, 1987, denying its motion for partial relief from judgment, challenging the measure of damages.

On appeal, the parties raise several issues. First, did the circuit court err in holding that the Court of Claims had subject-matter jurisdiction? We hold that it did not.

MCL 600.6419; MSA 27A.6419 sets forth the jurisdiction of the Court of Claims, and provides in pertinent part:

Except as provided in sections 6419a and 6440, the jurisdiction of the court of claims, as conferred upon it by this chapter, shall be exclusive. The state administrative board is hereby vested with

discretionary authority upon the advice of the attorney general, to hear, consider, determine, and allow any claim against the state in an amount less than $1,000.00. Any claim so allowed by the state administrative board shall be paid in the same manner as judgments are paid under section 6458 upon certification of the allowed claim by the secretary of the state administrative board to the clerk of the court of claims. The court has power and jurisdiction:

(a) To hear and determine all claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the state and any of its departments, commissions, boards, institutions, arms, or agencies.

However, this jurisdiction does not extend to claims for which an adequate remedy exists in federal court. See MCL 600.6440; MSA 27A.6440.

Here, a remedy did not exist in federal court. Although Congress can abrogate a state's Eleventh Amendment right to immunity from suit in federal court, it can do so only by making its intention "unmistakably clear" in the language of the statute. See *Welch v State Dep't of Highways & Public Transportation,* 483 US —; 107 S Ct 2941; 97 L Ed 2d 389, 397-398 (1987), and *Atascadero State Hospital v Scanlon,* 473 US 234, 242; 105 S Ct 3142; 87 L Ed 2d 171 (1985), reh den 473 US 926; 106 S Ct 18; 87 L Ed 2d 696 (1985). The ADEA contains no such language. See 29 USC 626(c). Hence, the circuit court's ruling that the Court of Claims had jurisdiction is affirmed.

The commission also claims that the trial court erred when it transferred the case to the Court of Claims without requiring the association to pay the commission's expenses and reasonable attorney fees for having been in the wrong court. See MCR 2.227. We disagree.

The transfer was one in which the trial judge in

circuit court assigned himself to hear the case as trial judge in the Court of Claims. The parties, issues and judge all remained the same. Although the commission asked for $75,000 in attorney fees, it had no additional expenses and the case, in fact, continued uninterrupted. The request of the commission was unreasonable. We affirm.

The next issue we address is whether the commission's modification of the group insurance plan violated the ADEA. We hold that it did.

The court found that the modification was neither economically justified nor cost motivated, and that it was a subterfuge to discriminate against employees over age sixty. After reviewing the record, we conclude that the trial court's findings of fact are not clearly erroneous, i.e., we are not left with a definite and firm conviction that a mistake has been made. *Northwest Acceptance Corp v Almont Gravel, Inc,* 162 Mich App 294, 304; 412 NW2d 719 (1987). As Isak Dinesen wrote in *Seven Gothic Tales* (New York: Smith & Haas, Inc, 1934): "As we grow old we slowly come to believe that everything will turn out badly for us." And here, indeed, was an aim to bring this about.

The ADEA makes it unlawful for an employer to discriminate against any individual with regard to the terms, conditions or privileges of employment on the basis of the individual's age. 29 USC 623(a)(1). However, the act also contained the following defense during the relevant time period:

> It shall not be unlawful for an employer, employment agency, or labor organization—
>
> * * *
>
> (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter. [29 USC 623(f).]

To prevail under this defense, defendant commission had to satisfy three criteria: It must have been (1) observing the terms (2) of a bona fide insurance plan (3) that is not a subterfuge to avoid compliance with the ADEA. See, e.g., *Germann v Levy,* 553 F Supp 700, 703 (ND Ill, 1982).

The commission argues that a plan which took effect before the ADEA applied to the states cannot be a subterfuge to evade the ADEA. We disagree.

We recognize that a plan which antedated the ADEA's enactment in 1967 cannot be a subterfuge to evade that act. See, e.g., *Equal Employment Opportunity Comm v Maine,* 644 F Supp 223, 227 (D Me, 1986), aff'd 823 F2d 542 (CA 1, 1987); *Equal Employment Opportunity Comm v Orange Co,* 837 F2d 420, 423 (CA 9, 1988). The modification here, however, was adopted several years after the ADEA was enacted. Even though at the time the modification was adopted the ADEA did not explicitly apply to the states, the modification nevertheless could have been a subterfuge to evade the act because the act was in existence. Moreover, the modification did not become effective until two months after the ADEA's application to the states became effective.

The following facts support the lower court's finding that the modification was a subterfuge. Defendant commission's witness, William Holt, testified that, although the insurance coverage was reduced fifteen percent each year for an employee over age sixty, the cost of insuring that employee rose only eight to nine percent. Moreover, the surplus reserve account for this group plan grew from about $1.5 million in 1968 to $8.3 million in 1983, which showed that the program was over-financed. Finally, because the commission still contributed twenty-four cents per $1,000 of coverage after the modification, it incurred less cost in

insuring employees ages sixty-one and over. Hence, we conclude that the lower court's findings are not clearly erroneous.

We also conclude that the lower court correctly awarded liquidated damages for a wilful violation of the ADEA. See 29 USC 626(b). In the fall of 1974, just after the modification became effective, an advisory board requested that the commission rescind the modification. Moreover, by both a letter dated October 1, 1974, and an oral request, John Doyle, executive director of the employees association, requested the commission to consider whether the modification was discriminatory and violated federal law. Presumably, the commission did not seek an opinion as to the modification's legality. The commission then did not rescind the plan until December, 1975. The commission acted in reckless disregard as to whether the modification violated the ADEA. See *Trans World Airlines, Inc v Thurston,* 469 US 111, 127-129; 105 S Ct 613; 83 L Ed 2d 523 (1985).

We now address the proper measure of damages for the beneficiaries of employees between the ages of sixty-one and sixty-five who died between July 1, 1974, when the modification took effect, and October 1, 1976, when the modification effectively was rescinded. The employees association contends that the proper measure of damages includes the insurance proceeds the beneficiaries would have received but for the discrimination. We agree. However, the trial court disagreed, relying on *Fariss v Lynchburg Foundry,* 769 F2d 958 (CA 4, 1985), and awarded plaintiffs the premiums defendant would have paid if not for the modification.

The *Fariss* court, in addressing the damages recoverable in an ADEA case for loss of a life insurance policy provided by the employer as a fringe benefit, rejected the contention that the

employer was liable for the proceeds of the life insurance policy. Instead, the court held that that employer was liable for the amount it would have paid in insurance premiums had the discrimination not occurred. The *Fariss* court, however, recognized the existence of contrary authority:

> The question, of course, concerns the proper measure of value. We reject plaintiff's contention that the proceeds of the insurance are the appropriate measure of value here. Typically, as in this case, the insurance proceeds are paid not by the employer but by a third party insurer with whom the employer contracts. By electing this method of protecting its employees, the employer manifests an intent to limit its own expenditures to definite and regular premiums, which ordinarily provide the basis for a damages calculation. See [*Combes v Griffin Television, Inc,* 421 F Supp 841, 844 (WD Okla, 1976)]. But see *Merkel v Scoville, Inc,* 570 F Supp 141, 146 (SD Ohio, 1983) (refusing recovery of premiums paid by employer but allowing insured medical expenses.)
>
> \* \* \*
>
> We decline to follow those decisions plaintiff cites favoring recovery of insurance proceeds or covered expenses. See *Merkel,* 570 F Supp at 146; *Spagnuolo v Whirlpool Corp,* 550 F Supp 432, 433 (WD N C, 1982), aff'd in part, rev'd in part on other grounds, 717 F2d 114 (CA 4, 1983); *Willett v Emory & Henry College,* 427 F Supp 631, 633 (WD Va, 1977), aff'd 569 F2d 212 (CA 4, 1978). (Title VII). Those courts prepared to place on the employer the risk that an employee will have an insured loss after termination misconstrue the "make whole" function of the ADEA. As this court has stated, the ADEA demands " 'the most complete relief possible' toward putting the victim of age discrimination back into the position he would have been in but for the unlawful discrimination." *Spagnuolo v Whirlpool Corp,* 717 F2d 114, 118 (CA 4, 1983), *quoting Franks v Bowman Transportation*

*Co,* 424 US 747, 764; 96 S Ct 1251, 1264; 47 L Ed 2d 444 (1976). Had Mr. Fariss not been terminated, he would have been covered by a life insurance policy with a $42,000 face value for the two years before his death. This insurance coverage, not the proceeds, is the benefit for which the employer must be held liable. Here the employer would in no event have been liable to the employee for the $42,000, but only for the continuing payment of premiums. The value of being insured for a given period is precisely the amount of the premiums paid. To require the employer to pay the face value of the policy would be to compel assumption of a risk not undertaken on behalf of any other employee. [769 F2d 965.]

*Merkel v Scovill, Inc,* 570 F Supp 141 (SD Ohio, 1983), aff'd in part and rev'd in part on other grounds 787 F2d 174 (CA 6, 1986), cert den 479 US 990; 107 S Ct 585; 93 L Ed 2d 587 (1986), involved health insurance benefits. In that ADEA case, the federal district court declined to award as damages the amount defendant would have paid for insurance premiums on behalf of the employee. Because the goal is to put the employee in the position he would have been in had there been no discrimination, the district court ruled that the plaintiffs could recover medical expenses incurred since their discharge and which would have been covered. *Merkel* is the better-reasoned opinion.

Here, the Civil Service Commission was specifically advised by the same advisory committee which initially advocated the modification at issue that changes in federal law made the policy unlawful under the ADEA. Nonetheless, the commission continued to discriminate against employees ages sixty-one and over. The discrimination arose from a deliberate plan by which older employees were to be discouraged from continuing their em-

ployment with the classified civil service of the State of Michigan.

Requiring the commission to pay affected beneficiaries the actual difference between the insurance in effect on the date of their insureds' deaths and that which should have been in effect is far more consonant with Michigan jurisprudential principles, which recognize that compensatory damages in situations involving intentionally tortious conduct may well be higher than those arising from simple negligence. See, e.g., *Veselenak v Smith,* 414 Mich 567, 574-575; 327 NW2d 261 (1982). Therefore, we conclude that the trial court erred in its ruling on the proper measure of damages.

The next issue concerns the trial court's grant of the association's motion to amend the judgment after the commission filed a claim of appeal from the judgment. On January 7, 1987, the trial court entered judgment on the issue of damages. The commission filed a claim of appeal from that judgment and from previous orders on January 27, 1987. On January 29, 1987, the employees association moved to amend the judgment and for partial relief from the judgment under MCR 2.612(C)(1)(a) and (f). In addition, on February 6, 1987, the association filed a motion for attorney fees and costs. On February 25, 1987, the trial court heard oral arguments on all the association's motions. By order dated March 6, 1987, the trial court granted the motion to amend the judgment and for an award of attorney fees, but denied the motion for partial relief from the judgment. The motion to amend the judgment was based on an error in calculating insurance benefits due under the modification plan to four plaintiffs.

MCR 2.611(B), which addresses amendment of judgments, states that a motion to amend must be filed within twenty-one days after entry of the

judgment. The association's motion was not filed within that time limit. The trial court should have dismissed the motion as untimely. Moreover, MCR 2.612 was not the proper rule under which the association could proceed under the circumstances.

Even if the trial court could have considered the motion as timely filed, it was without jurisdiction to rule because jurisdiction had already vested with this Court. The commission filed a timely claim of appeal on January 27. The filing of that claim of appeal vested jurisdiction with this Court. MCR 7.204(B). Thereafter, the trial court was without jurisdiction to amend the judgment. MCR 7.208(A).

Finally, the trial court awarded the association attorney fees of $78,436.34. See 29 USC 626 and 29 USC 216(b). When an award of attorney fees is proper, it is within the discretion of the trial judge. *Hensley v Eckerhart*, 461 US 424; 103 S Ct 1933; 76 L Ed 2d 40 (1983).

Although only 146 claims went to trial, and only nineteen members proved damages, the association prevailed on the primary issue of liability. Therefore, an award of fees was proper. The court made its award based solely on documented time spent on the case, and did so only after extensive discussion. The trial court did not abuse its discretion in setting attorney fees as it did.

Affirmed in part and reversed in part.